IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| JODY M. EMERY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 7-07-CV-084-BD |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jody M. Emery seeks judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq*. For the reasons stated herein, the hearing decision is affirmed.

I.

Plaintiff alleges that he is disabled as a result of pain in his neck and lower back. After his applications for disability and SSI benefits were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on March 28, 2006. At the time of the hearing, plaintiff was 46 years old. He has an eleventh-grade education and past work experience as a sales route driver, a merchandise deliverer, a bartender, a security guard, a cashier/checker, an oil field laborer, and a pipe cutter. Plaintiff has not engaged in substantial gainful activity since October 1, 2002.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that plaintiff suffered from bulging discs in his

thoracic and cervical spine, diabetes and related ailments, hypertension, hyperlipidemia, and obesity, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform a limited range of light work, but could not return to his past relevant employment. Relying on the Medical-Vocational Guidelines and the testimony of a vocational expert, the judge found that plaintiff was capable of working as a food and beverage order clerk, a charge account clerk, an appointment clerk, and a check casher -- jobs that exist in significant numbers in the national economy. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In a single ground for relief, plaintiff contends that the assessment of his residual functional capacity is not supported by substantial evidence and results from reversible legal error.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant

is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant shows that his substantive rights were prejudiced. *Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Plaintiff contends that the ALJ improperly discredited the opinion of his treating physician, Dr. Christian Kusi-Mensah, who concluded that his ability to perform most work-related activities was severely limited. (*See* Tr. at 211-14). The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Even if a treating source opinion is not given controlling weight, it still is entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.972." SSR 96-2p, 1996 WL 374188

at *4 (SSA Jul. 2, 1996). *See also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). These factors require consideration of:

    1. the physician's length of treatment of the claimant;

    2. the physician's frequency of examination;

    3. the nature and extent of the treatment relationship;

    4. the support of the physician's opinion afforded by the medical evidence of record;

    5. the consistency of the opinion with the record as a whole; and

    6. the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2). A treating source opinion cannot be rejected absent good cause for reasons clearly articulated in the hearing decision. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). More specifically, the ALJ must clearly articulate the weight given to the treating source opinion:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 at *4-5.

In a residual functional capacity questionnaire dated February 23, 2006, Dr. Kusi-Mensah indicated that plaintiff would have difficulty with sustained work activity because of chronic low back pain, neck pain, diabetes mellitus, depression, and limited vision due to diabetic retinopathy. (Tr. at 211-14). Specifically, Dr. Kusi-Mensah stated that plaintiff: (1) cannot sit for more than two hours at a time or stand for more than 10 minutes at a time; (2) needs a one hour break every two hours during an eight-hour work day; (3) can never twist, stoop, climb ladders, or lift more than 50 pounds; (4) can rarely crouch, squat, climb stairs, look up, or lift more than 10 pounds; (5) frequently

experiences pain and other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks; and (6) cannot perform even "low stress" jobs. (*Id.*).

The ALJ rejected these opinions, finding that plaintiff: (1) can lift and/or carry 20 pounds on a frequent basis; (2) can stoop, crouch, climb, and kneel occasionally; and (3) can stand and/or walk a total of three hours in a work day. (*Id.* at 21). The judge went on to find that plaintiff had the residual functional capacity to perform a significant range of light work, limited only by the need to avoid unprotected heights and other hazards due to his limited depth perception and lack of peripheral vision in his left eye. (*See id.*). In an exceedingly thorough decision, the ALJ explained why she discounted the opinions offered by Dr. Kusi-Mensah:

> A review of Dr. Kusi-Menash's progress notes of [February 23, 2006] showed that the claimant requested Dr. Kusi-Menash complete a form claiming that he was permanently disabled, and the claimant was told that he needed to be seen by a specialist (neurologist or neurosurgeon) to complete the form. There is no evidence that the claimant saw a specialist. Progress notes, dated February 26, 2006, indicated that the claimant was there for a physical for his lawyer and to have papers completed, and that Dr. Kusi-Menash completed the questionnaire at that time. Medical records showed that the claimant might have been at the Wichita Falls Family Practice Residence Program since late in 2003, but most of the visits until June 2005 showed that Dr. Ahmed treated the claimant, not Dr. Kusi-Menash.
>
> Social Security Ruling 96-2p states that controlling weight must be given to a treating source's medical opinion if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The contemporaneous treatment notes did not show reports of depression or of incapacity to tolerate even a "low stress" job. There are signs and findings reported in the questionnaire, such as positive straight-leg raising, not mentioned in contemporaneous treatment notes. There are not findings to show that the claimant never can stoop or can rarely climb or crouch. The treatment notes do not support such limitations. The opinion of Dr. Kusi-Menash, a treating physician, is considered, but not given controlling weight, because it is inconsistent with the other substantial evidence and his own treatment records.

> Treatment records from neurosurgeon Sanjoy Sundaresan, M.D., indicated that the claimant was grossly neurologically stable and ambulated without assistance. He had no signs or symptoms of cauda equine syndrome or myelopathy. The magnetic resonance imaging scans did not show any significant abnormalities, but showed findings likely similar to many in the working population. The claimant was adamant about not wanting to try interventional pain management techniques for his lower back and neck pain suggested by Dr. Sundaresan. The claimant rejected injections, reporting that he had experienced such before (although there was no medical evidence of any), which did not help. Dr. Sundaresan did not think that surgery would be of benefit. There was some discussion of a trial of a spinal cord stimulator, but no apparent follow-up. On his initial visit, the claimant requested narcotic pain medications, which were prescribed.
>
> Most of the claimant's treatment has been with the Wichita Falls Family Practice Residency. A review of treatment records indicates the claimant was seen by Dr. Carr and Dr. Ahmed on August 5, 2004, shortly after his last visit with Dr. Sundaresan. An examination of that date was normal with no neurological deficits, no radicular pain, normal reflexes, and normal strength. It was noted the claimant had a long history of chronic opiate use. He recently was started on a long-acting, slow release opiate, which he supplanted with Lortab and Soma. He was poorly expressive of his problem and the reason for wanting back surgery but indicated that he would still take opiates, even after surgery. He indicated he did not want to go to rehabilitation to get off the opiates but he was hoping "he would need fewer medications." Dr. Carr did not think the claimant would ever be off opiates, nor did he think he wanted to in his present state of mind. Often, individuals seeking narcotic pain medications allege symptoms making it more likely to receive the desired medications.
>
> For all such reasons, the conclusions of Dr. Kusi-Menash are given little weight. The State agency's reviewing physicians made findings essentially the same as shown in the residual functional capacity determined. These are consistent with the medical records and are convincing[.]

(*Id.* at 23-24) (internal citations omitted). The hearing decision makes clear that the ALJ rejected Dr. Kusi-Mensah's opinions because they were inconsistent with the medical evidence in the record. This constitutes "good cause" for giving the treating source opinion little weight. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1984 (1995); *Stafford v. Barnhart*,

402 F.Supp.2d 717, 724 (E.D. Tex. 2005). Although the ALJ did not make a specific finding as to each of the factors set forth in 20 C.F.R. § 404.1527(d)(2), her narrative indicates that each factor was considered. (Tr. at 22-23). The regulations require only that the hearing officer "apply" the section 1527(d)(2) factors and articulate good reasons for the weight assigned to the treating source opinion. 20 C.F.R. § 404.1527(d)(2). The judge need not recite each factor as a litany in every case. See *Alejandro v. Barnhart*, 291 F.Supp.2d 497, 507 (S.D. Tex. 2003).[1]

There is substantial evidence in the record to support the reasons given by the ALJ for rejecting the opinions of Dr. Kusi-Mensah. Although plaintiff had been diagnosed with depression and prescribed antidepressants, (*see* Tr. at 155-56, 216-17), there is no opinion by a mental health professional that plaintiff's depression was so severe as to preclude even a "low stress" job. Rather, the only evidence of the existence or severity of any depressive condition is statements made by plaintiff that he "feels depressed all the time" and is "tired[] all the time." (*See id.* at 155, 216). Nor is there any evidence that Dr. Kusi-Mensah, or any other treating or examining medical source, observed physical limitations to the degree alleged by plaintiff. The record is remarkable in that it is entirely void of any observation that plaintiff had difficulty walking, standing, sitting, lifting and carrying, twisting, stooping, or climbing. To the contrary, examinations performed by the Texoma Spine Center and the state agency physician revealed that plaintiff could ambulate without assistance. (*Id.* at 129, 130, 210). The state agency physician also determined that plaintiff could frequently lift or carry 10 pounds, could occasionally lift or carry 20 pounds, and could stand and

---

[1] To the extent plaintiff argues that the ALJ erroneously determined that Dr. Kusi-Mensah's contemporaneous treatment notes do not contain clinical evidence of positive straight leg raises, (*compare* Tr. at 24 *with id.* at 217, 221; *see also* 178, 190), or that the bulging discs shown on plaintiff's MRI are not "significant" abnormalities, (*see id.* 24), plaintiff has failed to demonstrate prejudice. While a positive straight leg raise and bulging discs may constitute evidence of a medically determinable impairment that supports subjective allegations of pain, they do not establish that the severity of plaintiff's impairments resulted in the limitations found by Dr. Kusi-Mensah in his residual functional capacity assessment.

sit about six hours during an eight-hour work day. (*Id.* at 204). This evidence, together with the observation of one doctor that "I do not think this man will ever be off opiates, nor do I think that he wants to in his present state of mind," (*see id.* at 178), supports the ALJ's finding that plaintiff may be exaggerating his symptoms in order to receive narcotic pain medication. (*See id.* at 24).

## **CONCLUSION**

Considering the record as a whole, the court concludes that the assessment of plaintiff's residual functional capacity is supported by substantial evidence and does not result from reversible legal error. The hearing decision is affirmed in all respects.

SO ORDERED.

DATED: September 17, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE